IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06–CV–_____

DANIEL C. CADLE,

       Plaintiff,

v.

KERRY R. HICKS, GLEN ALLEN DODGE, J. D. KLEINKE, PETER H.
CHEESEBOROUGH, LESLEY S. MATTHEWS, M.D., MARK PACALA, JOHN
QUATTRONE, and HEALTH GRADES, INC., a Delaware corporation (nominal defendant)

       Defendants.

## COMPLAINT AND JURY DEMAND

Through his undersigned attorneys, Plaintiff Daniel C. Cadle ("Cadle"), derivatively as a shareholder for and on behalf of Health Grades, Inc. ("Health Grades" or "company") states his complaint against Defendants as follows:

### Introduction

Plaintiff, Daniel C. Cadle, a shareholder of a publicly traded company, Health Grades, Inc., contends that Kerry R. Hicks, controlling shareholder of the same publicly traded corporation, Health Grades, Inc., is wasting corporate assets by having the company fund personal litigation by the controlling shareholder. Health Grades' Board of Directors is a captive of the controlling shareholder, and it refuses to take appropriate measures to both (a) stop the wasting of further corporate assets, and (b) recoup the wasted assets, which to date totals far in excess of $1,000,000 and is continuing. This is a derivative suit under F.R.C.P. 23.1 to recoup the already wasted assets and to halt the further wasting of corporate assets by the Defendants.

### A. Parties and Involved Entities

1.     Plaintiff Daniel C. Cadle ("Cadle") is a resident of the State of Ohio and is a non-controlling and minority shareholder of Health Grades. Cadle currently is a shareholder

of Health Grades and is entitled to enforce a right of a corporation, the corporation having failed to enforce a right which may have been properly asserted by it, within the meaning of F.R.C.P. 23.1.

2.      At all times relevant hereto, Buckeye Retirement Company, L.L.C., Ltd. ("Buckeye"), has been an Ohio limited liability company having its principal place of business in Newton Falls, Ohio.

3.      Health Grades, Inc. is a corporation organized and existing under and by virtue of the laws of the State of Delaware, which has its principal place of business in the City of Golden, County of Jefferson and State of Colorado at 500 Golden Ridge Road, Suite 100, Golden, Colorado 80401. Since April 15, 1999, directly or as the successor in interest to Specialty Care Network, Inc. or Healthgrades.com, Inc., Health Grades has been qualified to do business in the State of Colorado as a foreign corporation. It is a publicly traded corporation listed on the NASDAC using the symbol "HGRD".

4.      Defendant Kerry R. Hicks ("Hicks") has been the Chief Executive Officer and a Director of Health Grades since its inception in 1995. Defendant Hicks also is and has been the majority individual shareholder and controlling shareholder of Health Grades. On and after December, 2004 he has been the Chairman of the Board of Health Grades and, at various times up to the present, also has served as its President. Pursuant to the Sarbanes-Oxley Amendments to the Securities Exchange Act of 1934 ("Act"), as Chief Executive Officer of Health Grades, Hicks is required to certify that Health Grades' annual filings with the Securities Exchange Commission ("SEC") including forms 10K comply with the requirements of §§ 13(a) or 15(d) of the Act and fairly present in all material respects the financial condition and results of operations in the company.

5.      Defendant Glen Allen Dodge ("Dodge") has served as Senior Vice President-Finance and Chief Financial Officer of Health Grades since May, 2001. Prior to that time he was Vice President-Finance/Controller from March 2000 to May 2001 and Corporate Controller from September 1997 to March 2000. In addition, Defendant Dodge is a Certified Public Accountant. Pursuant to the Sarbanes-Oxley Amendments to the Act, as Chief Financial Officer of Health Grades, Dodge is required to certify that Health Grades' forms 10K comply with the requirements of §§ 13(a) or 15(d) of the Act and fairly present in all material respects the financial condition and results of operations in the company.

6.      At all times relevant hereto, Defendant J.D. Kleinke was a member of the Board of Directors of Health Grades and since December 2004 has served as Vice Chairman of its Board.

7.      At all times relevant hereto, Defendant Peter H. Cheeseborough has served as a Director of Health Grades.

8.      At all times relevant hereto, Defendant Leslie S. Matthews, M.D. has served as a Director of Health Grades.

9.      At all times relevant hereto, through sometime in 2005, Mark Pacala, served as a Director of Health Grades.

10.     At all times relevant hereto, Defendant John Quattrone has served as a Director of Health Grades.

11.     In the fourth quarter of 2004, when the acts complained of first were undertaken by the Directors of Health Grades, its Directors were Kerry R. Hicks, J. D. Kleinke, Peter H. Cheeseborough, Leslie S. Matthews, M.D., Mark Pacala, and John Quattrone (also known collectively in context as "Defendant Directors"). The remaining Directors thereafter have ratified the illegal conduct previously undertaken and persisted in the unlawful conduct hereafter described.

12.     At all times relevant hereto, Rothgerber Johnson and Lyons, LLP ("RJL") is and has been a limited liability partnership organized under and by virtue of the laws of the State of Colorado engaged in the general practice of law. Kris J. Kostolansky ("Kostolansky") was and is a partner in that firm. Both RJL and Kostolansky have rendered and continue to render the legal services hereafter described both to Health Grades corporately and to Hicks personally.

## B. Jurisdiction and Venue

13.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §1332(a) because the amount in controversy exceeds $75,000 and complete diversity exists between Plaintiff, a citizen of the state of Ohio, and Defendants, none of whom are citizens of Ohio to the best of his knowledge and information.

14.     This court also has subject matter jurisdiction of all related claims of Plaintiff under 28 U.S.C.A. §1367(a).

15.     Venue is proper pursuant to 28 U.S.C.A. §1391(a) because Health Grades is a Delaware corporation authorized to do business in Colorado, which has its principal place of business in the state and district of Colorado at 500 Golden Ridge Road, Suite 100, Golden, Colorado and which is subject to service of process in Colorado.

## C. Demand

16.     On September 1, 2006, Cadle submitted his demand on the Defendant Directors of Health Grades, that it create a special litigation committee of disinterested directors, investigate the matters contained therein, prepare a written report to the Board, institute

appropriate litigation to recover money lost to the company based upon the illegal conduct hereafter described and modify its governance and procedures to ensure accurate and timely reporting under the Act. That demand is attached hereto as Exhibit A and incorporated herein by reference. Cadle's demand generally related to a violation of fiduciary duties by Defendants in: 1) providing indemnification for certain attorney's fees and advancing expenses in a pending arbitration hereafter described; 2) failing to accurately and materially disclose under §§ 13 and 15(d) of the Act the actions they took; 3) failing to address the scope and basis of payments to Hicks or how and when repayment lawfully would be required; and, 4) facilitating vexatious litigation by Hicks against Plaintiff herein. On September 11, 2006, identified counsel for Health Grades responded very briefly saying "the Board of Directors of Health Grades will be meeting shortly to address your letter. A copy of that correspondence is attached hereto as Exhibit B and incorporated herein by reference.

17.    Having received no further communication from either Health Grades or its identified counsel, on October 3, 2006, Plaintiff supplemented that demand, which is attached hereto as Exhibit C and incorporated herein by reference.

18.    On October 11, 2006, identified counsel for Health Grades submitted its response to Exhibits A and B, for the first time indicating that the Board of Directors had decided "to form a special committee of independent directors of the Board to address the claims in your letter of September 1, 2006." That correspondence is attached hereto as Exhibit D and incorporated herein by reference. Those supposedly independent directors were not identified then or at any time thereafter.

19.    In response to Exhibit D, through counsel, on October 23, 2006, Plaintiff requested "a timeline on which we may expect action…" and asked "to schedule a time for Mr. Cadle and the special committee to meet, with counsel, to discuss the situation." That correspondence is attached hereto as Exhibit E and incorporated herein by reference.

20.    In response to Exhibit E, through identified counsel, on October 31, 2006, Defendants responded only "the Committee is diligently moving forward with this matter [and] will advise you as it proceeds if it considers a meeting with your client necessary." That correspondence is attached hereto as Exhibit F and incorporated herein by reference. Again, the supposedly independent directors comprising the Committee were not identified, no timeline was disclosed to Plaintiff and any proffer of information was rebuffed. To date, Cadle has received no other communication from Defendants in response to his demands, contained in Exhibits A and B, and the Board of Directors of Health Grades has taken no action thereon.

21.    Because Cadle has received no material information or report from the Board of Directors for Health Grades, the "special committee of independent directors of the Board" or its counsel, and no action of any kind evidently has been taken, effectively

Health Grades has refused the demand, so Cadle is entitled to proceed in this suit on a derivative basis on all claims asserted.

22.     On information and belief, beginning in 1999 RJL and Kostolansky provided legal representation to Health Grades, on a corporate basis, and to Hicks, on a personal basis, and they submitted their statements for all legal services rendered exclusively to Health Grades, which paid them. Defendants caused Health Grades thereafter to conceal that such services had been provided and that all payments therefore were made by Health Grades alone, until the fourth quarter of 2004, as hereafter alleged.

23.     Cadle has no access to a list of the names and addresses of shareholders and cannot therefore make further demand on shareholders individually to address the wrongs complained of hereafter.

24.     The wrongs specifically complained of hereafter were first disclosed by Defendants in the fourth quarter of 2004, and they have continued thereafter. Because the acts of which Cadle complains herein are continuing, he has the substantive right and authority to bring this action under C.R.S. §7-107-402 and Delaware Corporate Laws Annotated, Title 8 § 327. ("Del. C.")

25.     Plaintiff will fairly and adequately represent the interests of other shareholders similarly situated in enforcing the rights of the Company against the Defendants for correction and redress of the wrongs asserted hereafter within the meaning of F.R.C.P. 23.1.

26.     Plaintiff is willing to give notice to shareholders, once he can ascertain their identities, and to post bond as required by law, including F.R.C.P. 23.1 and as directed by this court.

### D. Factual Allegations

27.     On or about December 31, 1999, Hicks and Patrick C. Jaeckle ("Jaeckle"), then both officers of Specialty Care Networks, Inc. ("SCN") closed on a loan to them in the amount of $3,550,000 from the Bank of America ("BOA").

28.     Hicks and Jaeckle then loaned that money to SCN, which used it to purchase the balance of stock owned by venture capitalists in Health Grades.com, which became the surviving company in a merger.

29.     The BOA loans to Jaeckle and Hicks were memorialized in a series of three promissory notes, the last of which was in the principal amount of $1,000,000, dated March 31, 2000, (though executed in June 2000) and maturing September 30, 2000. It

was executed by Hicks and Jaeckle as a joint and several obligation of both. Hicks and Jaeckle defaulted on the loan and despite demand, refused to pay BOA the remaining balance on that renewal note in the amount of $350,000 ("Note").

30.     BOA pooled the delinquent loan with others and offered them all for sale through First Financial Network.

31.     Following due diligence with First Financial Network, The Cadle Company , an Ohio corporation ("TCC"), submitted the highest bid on BOA's loan offerings, which it irrevocably assigned to Buckeye and which thereafter became the separate property of Buckeye. Buckeye then executed a loan sale agreement with BOA on October 1, 2002, and it acquired the rights to collect the Note upon which Hicks and Jaeckle were liable.

32.     On September 29, 2003, Buckeye sued Hicks and Jaeckle in Case Number 03-03-0900 in the United States District Court for the Middle District in Tennessee, Nashville Division, pursuant to the terms of the Note ("the Tennessee litigation"). On or about October 23, 2003, Hicks filed a motion to stay pending arbitration in the Tennessee litigation, accompanied by his demand for arbitration. As a result of Hicks' actions, BOA repurchased the note from Buckeye on December 3, 2003. BOA then substituted itself in place of Buckeye in the Tennessee litigation on December 17, 2003. Thereafter, on February 1, 2004, BOA resold the delinquent Note for $100,000, terminating Buckeye's and TCC's interest and involvement in the BOA loan. On March 18, 2004, BOA then dismissed the suit against Jaeckle and Hicks. On March 22, 2004, the Tennessee court closed the case, which rendered moot Hicks' pending request to stay Buckeye's suit pending arbitration, and which ended any right by Hicks to indemnity or advancement of expenses in defending Buckeye's suit.

33.     On information and belief, continuing their earlier pattern of representation, RJL and Kostolansky continued to function as corporate counsel to Health Grades and as personal counsel to Hicks related to the Tennessee litigation. In 2004, they also began to provide additional advice and counsel to Hicks personally related to the initiation of litigation by him as a Claimant against Buckeye and others arising out of its attempt to collect on the BOA note, and they agreed with Defendants to represent him personally in such litigation that was thereafter filed.

34.     Despite the resolution of the Tennessee litigation in which Hicks was a defendant, at Hick's direction, beginning in October 2004 RJL and Kostolansky began to meet with Defendant Dodge to develop a litigation campaign against Buckeye using Health Grades' financial resources and to formulate a mechanism which would shield Hicks from appropriate administrative and legal inquiry concerning his participation in an apparent

bank fraud under 18 U.S.C. §1344 or in the obstruction of justice under 18 U.S.C. §1503[1].

35.    Because of Hicks' acts as aforesaid, Buckeye lost approximately $250,000 which adversely affected Cadle's interests therein.

36.    Thereafter on December 3, 2004, at the direction and insistence of Hicks and Dodge, RJL and Kostolansky prepared and filed a complaint in Denver District Court against BOA, TCC, Buckeye, Williams Shaulis ("Shaulis") and Cadle (collectively the "Cadle Defendants") in an action styled *Kerry R. Hicks, Plaintiff versus Bank of America, N.A. et al, Defendants*. That matter was removed to the United States District Court for the District of Colorado on December 20, 2004. Thereafter on January 13, 2005, Hicks filed an Amended Complaint in that action, deleting the Bank of America, and continuing the action against the remaining defendants in an action styled *Kerry R. Hicks, Plaintiff versus The Cadle Company et al, Defendants*, Civil Action Number 04-Z-2616 (CBS). On January 14 and on March 23, 2005, in two separate orders, the court stayed action pending arbitration and ordered all defendants to submit to arbitration, over the objections of all defendants except Buckeye. Those claims were heard together with a claim that Hicks had earlier filed with Judicial Arbitration and Mediation Service ("JAMS") in March 2004 which had not been served on defendants in the federal court litigation. RJL and Kostolansky then obtained two non-disclosure orders related to the litigation to preclude Cadle's contact concerning the BOA Note with any interested state or federal entities. The foregoing litigation is also sometimes described hereafter as "the Hicks' litigation."

37.    The JAMS arbitration ultimately proceeded on Hick's Third Amended Demand for Arbitration, also filed December 3, 2004, in which he asserted claims for relief for himself personally and not on behalf of Health Grades, against BOA for breach of fiduciary duty and constructive fraud, for fraud, for violation of the Tennessee Consumer Protection Act, for negligence and negligent misrepresentation; against Cadle and Buckeye for filing a vexatious and frivolous lawsuit; against Buckeye for abuse of process; and, against Cadle for defamation *per se*. No claims were asserted by Hicks on behalf of Health Grades. All the claims against Cadle and Buckeye related to individual wrongs and harms Hicks claims that he suffered personally. An award on Hicks' Third Amended Demand for Arbitration was entered on April 4, 2005, was confirmed by the U.S. District Court for Colorado on July 27, 2005 and is now on appeal to the United States Court of Appeals for the Tenth Circuit.

38.    Immediately following entry of the initial award by the arbitrator, on April 8, 2005, RJL and Kostolansky filed an additional Statement of Claims for "Claimant Kerry

---

[1] Mr. Hicks claims alternately that: 1) BOA defrauded him by inducing him to execute the promissory notes, upon which his liability was not limited, as he knew; or, that 2) he executed the various notes under false pretenses, never intending to be bound because he had an oral agreement with a BOA loan officer that he never had to repay the debt as one of two joint obligors.

R. Hicks" in his capacity personally against Buckeye and TCC, simultaneously adding Cadle and Shaulis personally. Those claims were for abuse of process, defamation *per se* and intentional infliction of emotional distress. Again, no claims were asserted on behalf of Health Grades. The Respondents filed counterclaims against Hicks personally, and the hearing thereon first was held February 28 and March 1-3, 2006. Due to the death of the original arbitrator, James Hinga, it was reheard before Arbitrator Frank Dubofsky on October 11-13, 2006. That matter still is pending.

39.     Beginning in the fourth quarter of 2004, based upon direction from Hicks and approval by Dodge, Health Grades began to disclose its continuing, full payment to RJL and Kostolansky of Hicks' attorney's fees for his private litigation against the Cadle Defendants. Health Grades' Form 10K, filed with the SEC for 2004, states the following:

> "In 2004, we provided indemnification to our Chief Executive Officer, Kerry R. Hicks, for legal fees totaling $272,000 relating to litigation involving Mr. Hicks. The litigation arose from loans that Mr. Hicks and three other executive officers provided to us in December 1999 in the amount of $3,350,000 (including $2,000,000 individually loaned by Mr. Hicks). These loans enabled us to purchase a minority interest in an internet healthcare rating business that has become our current healthcare provider rating and advisory services business. We were the majority owner of the business, but had agreed with the holder of the minority interest that if we failed to purchase the holder's interest by December 31, 1999, we would relinquish control and majority ownership to the holder. In March 2000, the executive officers were compelled to convert our obligations to them (including the $2,000,000 owed to Mr. Hicks) into our equity securities in order to induce several private investors to invest an aggregate of $14,800,000 in our equity securities.

> "The executive officers personally borrowed money from our principal lending bank in order to fund their loans to us. In early 2001, the bank claimed that Mr. Hicks was obligated to pay amounts owed to the bank by a former executive who was unable to fully repay his loan; Mr. Hicks denied this obligation. In October 2002, the bank sold the note to an affiliate of a collection agency (the collection agency and the affiliate are collectively referred to as "the collection agency"). Although the bank informed the collection agency in July 2003 of the bank's conclusion that Mr. Hicks was not obligated under the former executive's promissory note issued to the bank, the collection agency commenced litigation in September 2003 in federal court in Tennessee to collect the remaining balance of approximately

$350,000 on the note and named Mr. Hicks as a defendant. On motion by Mr. Hicks, the court action was stayed, and Mr. Hicks commenced an arbitration proceeding against the collection agency in October 2003, seeking an order that he had no liability under the note and asserting claims for damages. The bank was added as a party in March 2004.

"The bank repurchased the note from the collection agency in December 2003 and resold the note to another third party in February 2004, so that Mr. Hicks' obligation to repay the note was no longer at issue. The remaining claims included, among others, claims by the bank against Mr. Hicks for costs and expenses of collection of the loan, claims by the collection agency against Mr. Hicks for costs relating to this matter and claims by Mr. Hicks against the bank for breach of fiduciary duty and fraud, and against the collection agency for abuse of process and defamation. Mr. Hicks also commenced litigation against the other parties in Colorado state court based on similar claims. An arbitration hearing was held from February 1-4, 2005, and a determination by the arbitrator is pending.

"Our determination to indemnify Mr. Hicks was based on, among other things, the fact that the dispute related to Mr. Hicks' efforts and personal financial commitment to provide funds to us in December 1999, without which we likely would not have remained viable. Although we expect to indemnify Mr. Hicks for additional legal expenses incurred in 2005, we do not expect these expenses to be material in relation to our total operating expenses in 2005."

40.     Health Grades' 2004 10K materially misrepresents the reason and basis for Buckeye's suit against Hicks, and Health Grades' involvement and interest in the Tennessee litigation: it had none. It also omits material information that the litigation resulting from the BOA Note involving Buckeye had terminated by December 17, 2003 and that no claim ever had been made against Health Grades; conceals that the ongoing litigation at issue now only related to Hicks' personal suit as a claimant; it conceals information that Health Grades' payments for legal services to RJL and Kostolansky were the result of a conflict transaction between Hicks and Health Grades, or a loan to Hicks by Health Grades, neither of which were legally permissible or reviewed by the Board as required by Colorado and Delaware law; it conceals information that the Board approved the payment of fees to RJL and Kostolansky  for legal services rendered personally to Hicks  in at least an amount of $272,000 even though the payments were impermissible under Colorado and Delaware law; it conceals the information that the Board did not comply with the requirements of either Colorado or Delaware law for investigating a request for indemnity or advance payment of expenses to the Hicks

litigation or for granting the same; and, it conceals the information that no affirmation or undertaking ever was or had been provided by Hicks to Health Grades as required by Colorado or Delaware law as a precondition to indemnification or advance payment of expenses, including attorney's fees. Both Dodge and Hicks certified that Form 10Q as accurate and compete, as they were required to do by law.

41.     Health Grades' Form 10Q for 2005 continues the aforesaid material misrepresentations and concealments. The March 2005 10Q discloses "additional indemnification of approximately $205,000 during the three months ended March 31, 2005." (Note 5). The June 2005 10Q discloses "additional indemnification of approximately $266,000 during the six months ended June 30, 2005." (Note 7). The September 2005 10Q discloses "additional indemnification of approximately $337,000 during the nine months ended September 30, 2005." (Note 9). Through September, 2005 the total of indemnity payments in 2004 and 2005 for personal legal fees to RJL and Kostolansky in the Hicks' litigation from Health Grades in 2004 and 2005 was disclosed to be $609,000. In its Form 10Qs for 2005, Health Grades continues to make the same material misstatements and conceal the same information addressed above. Both Dodge and Hicks certified those Forms 10K as accurate and compete, as they were required to do by law.

42.     Health Grades also reported on the Hicks' litigation in paragraph 15, "Indemnification of our Chief Executive Officer" in its 2005 Form 10K, filed with the SEC. It continued to make the material misstatements and concealments outlined above. In that document, Health Grades for the first time included a statement that "Mr. Hicks has advised us that he intends to reimburse us for all indemnification expenses we have incurred and continue to incur, from the proceeds of any final award paid to him, net of any income taxes payable by him resulting from the award." As discussed below, such an undertaking is insufficient as a matter of law to justifying indemnity payments or expense advances. Through the end of 2005, the total of indemnity payments for personal legal fees to RJL and Kostolansky in the Hicks' litigation from Health Grades was disclosed to be $733,000.

43.     The only justification that Health Grades provided in its 2004 and 2005 Forms 10Qs and 10Ks for indemnity was that "the dispute related to Mr. Hicks' efforts and personal financial commitment to provide funds to us in December 1999, without which we likely would not have remained viable." Health Grades' representations therein concealed the information that it had no potential financial exposure or liability to Buckeye or any Cadle Defendant; that Hicks' potential liability to any Cadle Defendant had been fully extinguished by December 17, 2003; and, that none of the pending litigation involved any claim by any Cadle Defendants against Hicks in his official capacity as an officer or Director of Health Grades for its benefit, but it only involved his personal claims in an individual capacity to recover money for himself in the Hicks' litigation, to which Health Grades had no right. Both Dodge and Hicks certified Health Grades' Form 10Q as accurate and compete, as they were required to do by law.

10

44.     Health Grades' March 2006 Form 10Q, filed with the SEC, discloses that a total of $1,027,000 had been paid to RJL and Kostolansky by it for the Hicks' litigation through March 31, 2006, including approximately $272,021, $460,532 and $294,324 for 2004, 2005 and the first three months of 2006.  (Note 6).  In this Form 10Q, Health Grades continues to make the same material misrepresentations and conceal the same information addressed above.   Both Dodge and Hicks certified this Forms 10Q as accurate and compete, as they were required to do by law.

45.     Health Grades' June 2006 10Q, filed with the SEC, materially understates the total of legal fees provided for Hicks by omitting prior indemnity payments and expense advances in the amount of $732,553 for 2004 and 2005 and instead states only that "for the first six months of 2006 we provided indemnification to our Chief Executive Officer, Kerry R. Hicks, for legal fees totaling approximately $431,000."  (Note 6).  In this Form 10Q, Health Grades continues to make the same material misrepresentation and conceal the same information addressed above.  Both Dodge and Hicks certified this Forms 10Q as accurate and compete, as they were required to do by law.

46.     Health Grades' September, 2006 Form10Q, filed with the SEC again only states "for the first nine months ending September 30, 2006, we provided indemnification to our Chief Executive Officer, Kerry R. Hicks, for legal fees totaling approximately $512,000." (Note 6).  It omits all discussion of prior indemnity payments and expense advances in 2004 and 2005.  In this Form 10Q, Health Grades continues to make the same material misrepresentations and conceal the same information addressed above. Both Dodge and Hicks certified this Forms 10K as accurate and compete, as they were required to do by law.

47.     Dodge and Hicks certified that all of the foregoing filings with the SEC were complete and accurate in all material respects, as required by the Sarbanes-Oxley Amendment to the Securities Exchange Act of 1934. Each of these certifications was and is knowingly false.

48.     Defendants have materially concealed or misrepresented the standards under which the provision of indemnity or advancement of expenses to a director or officer of Health Grades, including Hicks in the Hicks' litigation, is proper.

49.     Health Grades and Hicks, as a Director and Chief Executive Officer of Health Grades, are subject to provisions of both Colorado law and Delaware law related to indemnification of Directors and Officers.  The relevant provision in Colorado law is C.R.S. § 7-109-101 *et seq.* and in Delaware law § 8 Del. C, §145.

50.     The objective of both the Colorado and Delaware indemnification statutes is to protect the corporation's directors and executive officers from personal liability for decisions made in the best interests of the corporation.

51.     Extending indemnity to a director or officer by a corporation is limited to paying for the defense of a claim seeking to impose personal liability against such officer or director acting in the best interests of the corporation. C.R.S. §7-109-102(1) only permits indemnification of a director *"against liability incurred in the proceeding,"* if that person's conduct was in good faith and the person to be indemnified reasonably believed that his conduct was in the corporation's best interests or, at least, his conduct was not opposed to the corporation's best interests. Further, C.R.S. §7-109-103 explicitly states:

> "Unless limited by its Articles of Incorporation, a corporation shall indemnify a person who is wholly successful, on the merits or otherwise, *in the defense of any proceeding* to which the person was a party because the person is or was a director, against reasonable expenses incurred by the party in connection with the proceeding."

That provision explicitly requires that the director to be indemnified must be the defendant in the action and he must succeed in his defense.

52.     8 Del. C., §145(a) also permits indemnity for officers and directors in carefully defined circumstances.   8 Del. C, §145(b) allows indemnity for "expenses (including attorneys' fees) actually and reasonably incurred by the person *in connection with the defense or settlement of such action* or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation."   Delaware law requires that the defense mounted by the director or officer be successful. 8 Del. C., §145(c).

53.     Colorado law permits the advance of expenses to directors prior to the time of a final determination on the merits of a suit under certain conditions, none of which Health Grades and the other Defendants have met here, which include:

> A. the director must furnish written affirmation "of the director's good faith belief that the director has met the standard of conduct described in §7-109-102" quoted above;
> B. the director furnishes "to the corporation a written undertaking, executed personally or on the director's behalf, to repay the advance if it is ultimately determined that the director did not meet the standard of conduct."; and
> C. a determination is made by directors exercising reasonable business judgment "that the facts then known to those making the

determination would not preclude indemnification under this article." C.R.S. §7-109-104.

To the same effect is 8 Del. C., §145(e).

54.     Both Colorado and Delaware law establish a specific procedure that must be followed by the corporation to extend indemnity. C.R.S. §7-109-106 precludes indemnification unless the director "has met the standard of conduct set forth in §7-109-102," and it precludes an advance of expenses "unless authorized in the specific case after the written affirmation and undertaking . . . are received and the determination [that the facts and circumstances do not preclude indemnification] has been made." In Colorado, that determination must be made by a majority vote of disinterested directors after a quorum has been established; by independent designated legal counsel; or, by stockholders. Delaware law is to the same effect in 8 Del. C., §145(d).

55.     Under 15 U.S.C. §78(c)(a)(a) Health Grades is an "issuer" because it is a person who has issued a security.

56.     By virtue of their acts and failures to act, Defendants have concealed material information or made materially false disclosures to the public and shareholders contrary to the requirements of Sections 13 and 15 of the Securities Exchange Act of 1934. Specifically, at the instance of Hicks Defendants represented in Health Grades' Forms 10Q's and 10K's that "the litigation arose from loans that Mr. Hicks and three other executive officers provided to us in December 1999 in the amount of $3,350,000. . . . These loans enabled us to purchase a minority interest in an internet healthcare rating business that has become our current healthcare provider rating and advisory services business." In fact, there was no dispute between Health Grades and Hicks related to those loans, and no litigation related thereto was pending when Hicks undertook the Hicks' litigation, personally as a Claimant, against the Cadle Defendants. That information never has been disclosed publicly by Defendants. Further, Defendants have concealed that there is no affirmation and undertaking required under Colorado and Delaware law as a pre-requisite to indemnity or advance payment of expenses.

57.     To the extent Hicks is not entitled to indemnification or advance payment of expenses from Health Grades, its payment of his legal fees to RJL and Kostolansky, as disclosed in its 2004 Form 10K, its 2005 Form 10K and 10Q's and its 2006 Form 10Q's constitutes a conflict of interest transaction as defined by C.R.S. §7-108-501 because it embodies an unsecured demand loan to him. That loan was and continues to be unlawful because it never has been approved by the Board of Directors of Health Grades in accordance with the requirements of C.R.S. §7-108-501(4).

58.     Under the facts alleged above, Health Grades' payment of attorney's fees to RJL and Kostolansky in the Hicks' litigation also is an improper extension of credit that violates 8 Del. C., §143 and 144.

59.    Under the facts alleged above, Health Grades and the Defendant Directors made unlawful loans to Hicks contrary to the Sarbanes-Oxley Amendments to the Securities Exchange Act of 1934.

60.    Since RJL and Kostolansky had been engaged to provide legal services to Health Grades, corporately, which included advise and counsel in the Tennessee litigation, when they then undertook to represent Hicks personally in the Hicks' litigation and to request and accept payments from Heath Grades for attorneys' fees and expenses, Hicks' and their interests were then and continue to be adverse to those of Health Grades.  As a consequence, RJL and Kostolansky could not provide independent legal counsel or advice to Health Grades related to Hicks' request for indemnity or advance payment of expenses and his obligations in connection therewith.

61.    Hicks has have dominated and controlled the affairs of Health Grades and its Board of Directors, including the Defendant Directors.  He has elevated his personal interests ahead of the interests of Health Grades and its shareholders including Plaintiff. Acting in concert with Dodge and defendant Directors, Defendants have entrenched themselves and used corporate assets and opportunities in a manner detrimental to the best interests of the company and shareholders including Plaintiff.

62.    Because Hicks exercises *de facto* control over the affairs of Health Grades, Defendants have failed to follow the provisions for indemnification and payment of expenses authorized under Colorado or Delaware law; Dodge has approved payments to RJL and Kostolansky for the Hicks' litigation and the personal benefit only of Hicks; and Hicks has been able to accept and apply those payments to his attorneys' fees, without disclosing them as income to him.  Defendants have undertaken the foregoing unlawful acts or failed to act to maintain and enhance their positions as officers and directors of Health Grades.

63.    Given that Hicks exercises *de facto* control over Health Grades as aforesaid; that Defendant Directors function as a captive board, controlled and directed by Hicks and acting in concert with him; or, that defendants failed to obtain independent legal counsel, to submit the issue of indemnification or advancement of expenses to shareholders or to respond to Plaintiff's demand, no actions or decisions Defendants took are entitled to deference under the Business Judgment Rule. Defendants have unlawfully undertaken the foregoing acts or failure to act to maintain and enhance their positions as officers and directors of Health Grades.

64.    Based upon the foregoing acts and failures to act, Defendant Directors have permitted Hicks to convert corporate assets to his own use and benefit by continuing to fund the Hicks' litigation against Plaintiff.

65.     Based upon the foregoing acts and failures to act, Defendants individually and collectively have violated their fiduciary duties of loyalty, candor, independence and care to Health Grades and its shareholders, including Plaintiff.

66.     Defendants have mismanaged and neglected the affairs of Health Grades in a manner detrimental to the best interests of it and its shareholders, including Plaintiff.

67.     Defendants have failed to act in good faith and fairly for the benefit of shareholders of Health Grades, including Plaintiff. Instead, Defendants' actions have been characterized by willful misconduct and malice.

**Claim One**
**Waste**
**All Defendants**

68.     Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

69.     Based upon the acts, failure to act and conduct described above, Defendants have wasted and continue to waste corporate assets and opportunities by permitting Defendant Hicks to incur personal attorney's fees in the Hicks' litigation with RJL and Kostolansky, for which Health Grades has paid, and for which it has become obligated to pay, without limitation, obligation upon Hicks for repayment or proper oversight by the Defendants.

70.     Because of Defendants' acts, failure to act and conduct described above, Health Grades has been deprived of the use of corporate resources equal to the amount to the payments of Hicks' personal attorneys' fees to RJL and Kostolansky in the Hicks' litigation,  and it has lost the value of investments in legitimate corporate opportunities and earnings thereon.

71.     On behalf of Health Grades, Plaintiff is entitled to recover the actual economic damages proximately resulting from Defendants' waste and loss of corporate assets and opportunities in an amount to be proved at trial.

**Claim Two**
**Conversion**
**Hicks**

72.     Plaintiff incorporates by reference the paragraphs of this Complaint as if fully set forth herein.

73.     Based upon the acts, failure to act and conduct described above, Defendant Hicks has converted assets properly belonging to Health Grades and its shareholders, including Plaintiff, to his own use and benefit by knowingly accepting the value of Health Grades' payment of his personal attorney's fees to RJL and Kostolansky in the Hicks' litigation,

15

without limitation, obligation upon Hicks for repayment or proper oversight by the Defendants.

74.     On behalf of Health Grades, Plaintiff is entitled to recover the actual economic damages proximately resulting from Hicks' conversion in an amount to be proved at trial.

**Claim Three**
**Fraud and Illegality**
**All Defendants**

75.     Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

76.     Based upon their acts, failure to act and conduct described above, Defendants have purposely violated Colorado and Delaware state law and federal law by concealing material information or making materially misleading statements in Health Grades' Forms 10Q and 10K related to the lawfulness of its indemnity or advance payment of expenses to Hicks, including payments of his personal attorneys' fees incurred therein, to RJL and Kostolansky; related to its non-compliance with the indemnity or expense advancement provisions of Colorado and Delaware law before it undertook to indemnify Hicks or advance his expenses; related to the lawfulness of loans to Hicks contrary to the Sarbanes-Oxley Amendments to the Securities Exchange Act of 1934; and, related to the lawfulness a conflict transaction it undertook with Hicks.

77.     None of the Defendants' actions were reasonable, and they are not protected by the Business Judgment Rule.

78.     On behalf of Health Grades, Plaintiff is entitled to recover the actual economic damages proximately resulting from Defendants' fraud and illegality in an amount to be proved at trial.

**Claim Four**
**Conspiracy**
**All Defendants**

79.     Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

80.     The individual Defendants acted, failed to act and mutually engaged in conduct described above in knowing concert with each other to fulfill the purposes of entrenching themselves, transferring the value of the Health Grades' assets to Hicks, ignoring the interests or welfare of shareholders and otherwise operating the company as a personal fiefdom and source of funds for Hicks, free from oversight or direction of shareholders, including Plaintiffs.

81.     Defendants have engaged in one or more overt acts in furtherance of the conspiracy, including, without limitation, issuing the false Forms 10K and 10Q, filed with the SEC from 2004 through 2006; certifying the completeness and accuracy thereof; and, paying Hicks' personal attorneys' fees in the Hicks' litigation in which he was and is the sole claimant to RJL and Kostolansky in an amount currently estimated at $1,500,000 without an affirmation or undertaking.

82.     The aforesaid actions were wrongful and constituted a civil conspiracy between and among the Defendants.

83.     On behalf of Health Grades, Plaintiff is entitled to recover the actual economic damages proximately resulting from Defendants' conspiracy in furtherance of waste, conversion, fraud and illegality in an amount to be proved at trial.

**Claim Five**
**Injunctive Relief**
**All Defendants**

84.     Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

85.     As is apparent from the acts, failure to act and conduct described above, unless enjoined, Defendants will continue to disregard the interests of the shareholders, including Plaintiff, mismanage the corporate affairs of Health Grades, further entrench themselves for their own use and benefit, misappropriate the assets of Health Grades for their personal use and benefit and ignore their fiduciary duties of care, loyalty, candor and independence to Health Grades and its shareholders, including Plaintiff.

86.     Allowing Defendants or any of them to continue to control the affairs of Health Grades will result in further irreparable injury, loss and damage to the Company which cannot be compensated monetarily because the corporation will continue to lose capital that cannot then be deployed for other legitimate corporate opportunities and purposes and the shareholders will lose all value resulting therefrom, as long as Health Grades continues to indemnify Hicks and advance expenses in the Hicks' litigation, including paying his personal attorney's fees to RJL and Kostolansky.

87.     On behalf of Plaintiff Health Grades and to address and equitably remediate the effects of Defendants' acts, failure to act and conduct as aforesaid, Plaintiff is entitled to relief under C.R.C.P. 65 and 66, as follows:

> a. Enjoining indemnity from Health Grades or advance payment of his expenses, except as authorized by Colorado or Delaware law;
>
> b. Enjoining payments to RJL and/or Kostolansky hereafter; and,

17

    c.   Enjoining further loans to Defendants from Health Grades.

## Claim Six
## Attorney's Fees
## All Defendants

88.    Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

89.    Based upon the fund created by damages assessed against Defendants for Health Grades, Plaintiff requests an award of reasonable attorney's fees in an amount to be proved hereafter, under federal and state law.

## Claim Seven
## Participatory Damages
## All Defendants

90.    Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

91.    As wronged shareholder, Plaintiff is entitled to recover his consequential damages, including the participatory value of his interest and involvement herein on behalf of Health Grades, in reasonable amount related to Claims One through Five.

WHEREFORE, Plaintiff respectfully prays that the Court grant him the relief prayed for above in this Complaint and for all such other relief as the Court may deem appropriate, at law or in equity, including all actual damages proved at trial, costs recoverable by law, the costs of experts and interest and attorney's fees.

**Plaintiff hereby demands a trial by jury on all issues so triable.**

Respectfully submitted this _/8th_ day of December, 2006.

                             PEARSON, HOROWITZ, & BURNETT, P.C.
                             Original signature on file in accordance with CRCP §121

                             /s/ Russell P. Rowe
                             Counsel for Plaintiff
                             Russell P. Rowe, #2443
                             1775 Sherman Street #3100
                             Denver, CO 80203
                             (303) 298-1999
                             (303) 298-7010 (fax)

STATE OF OHIO                        )
                                     )ss.
COUNTY OF _TRUMBULL_                  )

     I, DANIEL C. CADLE,, the Plaintiff herein, being first duly sworn upon my oath, depose and say that I have read the foregoing Verified Complaint and the contents are true to the best of my knowledge and belief.

                                        Daniel C. Cadle, Plaintiff

The foregoing instrument was acknowledged before me this _15th_ day of December, 2006, by Daniel C. Cadle.

     Witness my hand and official seal.

                                NOTARY PUBLIC

My commission expires:

                                JO BETH GIBBS
                         Notary Public, State of Ohio
Plaintiff's Address:          My Comm. Expires Sept. 20, 2007
Daniel C. Cadle
100 North Center Street
Newton Falls, OH  44444

17